IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1491-09






WILTON LARRON MAHAFFEY, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TWELFTH COURT OF APPEALS


HENDERSON COUNTY





 Keller, P.J., filed a dissenting opinion.



 I have several disagreements with the Court's opinion, which I will address briefly.

 This Court says that the Tyler court's holding means that a driver must signal any movement
that is "not a perfectly straight trajectory." I think this overstates the holding, at least to the extent
that it suggests that driving on a curved road would require using a turn signal.

 The Court says that the Tyler court's holding would require a signal before swerving around
a turtle or pulling over for an ambulance. First, so what? There is nothing absurd about requiring
signals in emergency situations. Second, there is always the defense of necessity if signalling is not
possible. Third, drivers have to signal if they change lanes, even in emergencies, so if the Tyler
court's analysis leads to an absurd result, it has nothing to do with the holding that a merge is a turn.

 The Court defers to the Texas Driver's Handbook as an administrative agency's construction
of a statute. But the Handbook is not really an administrative determination as contemplated by
courts in Texas. Moreover, the Handbook itself says:

 The information herein is not intended to be an official legal reference to Texas
traffic laws. It is intended only to explain in everyday language those laws and
driving practices and procedures which you need most often when driving in Texas. (1)


 Moreover, even if it were proper to employ the Handbook as the Court does, I think it is
inaccurate to say that there is an "administrative determination by the Texas Department of Public
Safety that the Transportation Code requires a signal for only one type of merge-that of entering a
freeway." It does not follow from the fact that the Handbook refers explicitly to only that particular
type of merge that other types of merges have been excluded from the signalling requirement. 

 The Court analogizes this case to Getts v. State, (2) but that case is not on point. First, the State
in this case does not argue that we should follow the Legislature's intent "regardless of what it
wrote." It argues instead that we should construe the actual language of Section 545.104(a) in light
of the statute that preceded it. Second, the State is correct. Section 545.104(a) is not an amended
statute; it is a codification of a statute. Getts did not involve statutes that were part of the
codification process. 

 The Texas codification process, as recognized explicitly in Transportation Code § 1.001,
involves the transfer of provisions from the revised civil statutes into "codes" that arrange the
statutes in a more logical order, employ a numbering system designed to facilitate citation of the law
and accomodate future expensions of the law, eliminate provisions that are duplicative or no longer
effective, and restate the law "in modern American English to the greatest extent possible." (3) 
Transportation Code § 1.001 explicitly provides that the codification program "contemplates a
topic-by-topic revision of the state's general and permanent statute law without substantive change." (4) 
The Court cites only to the legislative history to express this sentiment, but in fact, the avowed
purpose of codifying the law "without substantive change" is contained within the words of a
statutory provision. Under Boykin, then, we must give effect to the plain language of § 1.001 by
considering the former statute in construing the Transportation Code provision. It may nevertheless
be true that, if the former statute is ambiguous, the actual legislative intent of that statute may be
accurately and more clearly reflected in the current codified provision.

 The prior statute read in relevant part:

(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper
position upon the roadway as required in Section 65, or turn a vehicle to enter a
private road or driveway, or otherwise turn a vehicle from a direct course or move
right or left upon a roadway unless and until such movement can be made with
safety. Except under conditions set out in Section 24(a) no person shall so turn any
vehicle without giving an appropriate signal in the manner hereinafter provided.


* * *



(d) The signals provided for in Section 69 of this Act shall be used to indicate an
intention to turn, change lanes, or start from a parked position . . . . (5)


Use of the phrase "so turn" could be read to encompass all of the preceding actions in the paragraph,
or it could be read to encompass only those actions which are denominated a "turn." If read in the
former manner, then the phrase "so turn" would effectively craft a definition in the statute. If read
in the latter manner, then the phrase would simply refer the reader to earlier uses of the word "turn."

 It is true that the former reading results in redundancies. But that is the more natural reading
of the statute, especially given the language "so turn." Had the legislature intended that the signal
requirement not apply to moving left or right on a roadway, I believe the statute would have said
instead "no person shall turn." It strikes me as odd and unlikely that the legislature would list a
number of actions in a single statute, and in that same statute, except one action out from the
strictures applied to all the rest without doing so explicitly. 

 I respectfully dissent.

 

FILED: June 30, 2010

PUBLISH
1. Tex. Dept. Public Safety, Texas Driver's Handbook, Introduction. 
2. 155 S.W.3d 153 (Tex. Crim. App. 2005).
3. Tex. Transp. Code §1.001(b).
4. Id., §1.001(a) (emphasis added).
5. Tex. Rev. Civ. St., Art. 6701d, §68(a).